**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **STEPHEN P. FAHEY, AS RECEIVER FOR AGRIDIME LLC,** | § | |
| ***Plaintiff,*** | § | |
| **v.** | § | **Civil Action No. 4:26-CV-______** |
| **ANTON HELFRICH, ET AL.,** | § | |
| ***Defendants.*** | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Stephen P. Fahey, in his capacity as Court-appointed Receiver for Agridime LLC ("Plaintiff" or "Receiver"), files this Original Complaint against certain Relief Defendants (as named below) and respectfully states as follows:

## I. NOTICE OF RELATED CASES

Pursuant to Local Rule 3.3, Receiver discloses what he believes to be a related case as defined by Local Rule 3.3(b). The related case is *SEC v. Agridime LLC et al.*, Civil Action No. 4:23-cv-1224-P, which is pending in the United States District Court for the Northern District of Texas, Fort Worth Division. The Honorable Mark T. Pittman is presiding.

## II. OVERVIEW

1. On December 11, 2023, the Securities and Exchange Commission (the "SEC") commenced a lawsuit against Josh Link, Jed Wood, and their company, Agridime LLC ("Agridime") (collectively, the "Receivership Defendants") to halt the ongoing, fraudulent, and unregistered offering of securities and an active Ponzi scheme perpetrated by Receivership

Defendants.[1] On the same date, the Court signed an order appointing Stephen P. Fahey as Receiver over Receivership Defendants.[2] ECF No. 15.

2. Between 2021 and 2023, Agridime raised approximately $191 million from more than 2,100 investors in multiple states, by selling investment contracts related to the purported purchase, feeding of, and later sale of cattle (the "Cattle Contracts"). ECF No. 1, ¶ 2. Agridime promised these investors artificially high, guaranteed annual returns ranging from 15% to 32% under the Cattle Contracts (the "Returns"). *Id.* As part of its advertising, Agridime stated, "[w]e know it sounds too good to be true." *Id.* The Cattle Contracts were, in fact, too good to be true, as the Receivership Court made a finding that Agridime was operated as a Ponzi scheme since October 1, 2021. ECF No. 118.

3. Relief Defendants not only received from Agridime sums equal to their principal investments but also received Returns exceeding those investments. These Returns came not from revenue generated by legitimate business,[3] but from monies contributed by defrauded investors.

4. At this stage of the Receivership, Receiver has identified substantial sums of Returns that were paid to Relief Defendants, and, through the filing of this Complaint, seeks the return of those funds to the Receivership Estate.

---

[1] Unless otherwise stated, citations to Court records herein are from the case styled *SEC v. Agridime LLC, et al.,* Civil Action No. 4:23-cv-1224-P.

[2] The Court later entered an amended Order with the same terms. ECF No. 209. The original order and amended order are collectively referred to herein as the "Order."

[3] As stated above, the Court has made a finding that Agridime operated as a Ponzi scheme as of October 1, 2021. ECF No. 118.

## III.
## PARTIES

5. Receiver is the court appointed receiver for Receivership Defendants in the case styled *SEC v. Agridime, LLC et al.*, pending in the United States District Court for the Northern District of Texas, Fort Worth Division. Receiver is a resident and citizen of the State of Texas.

6. Anton Helfrich resides at 9228 1 St. SW, Dunn Center, North Dakota 58626. Between March 2022 and November 2023, Helfrich received approximately $1,349,999 in Returns traceable to the Receivership Defendants' fraudulent scheme. Helfrich is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

7. Joshua Perry resides at 2699 E. Grandview Dr., Sandy, Utah 84092. Between March 2022 and May 2023, Perry received approximately $125,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Perry is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

8. Quo Vadis, LLC d/b/a FarmAField is a Nebraska limited liability company with its principal place of business in Lincoln, Nebraska. Quo Vadis, LLC d/b/a FarmAField may be served with process through its registered agent, Mitchell Minarick, at 601 Danville Drive, Lincoln, Nebraska 68510. Between June 2022 and May 2023, Quo Vadis, LLC d/b/a FarmAField received approximately $100,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Quo Vadis, LLC d/b/a FarmAField is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

9. Randy Schafer resides at 1741 292nd Ave. NE, Wilton, North Dakota 58579. Between October 2022 and October 2023, Schafer received approximately $83,250 in Returns traceable to the Receivership Defendants' fraudulent scheme. Schafer is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

10. Greg Kent, as Trustee of the Kent Family Revocable Trust. Kent resides at 29371 Grand Coteau Dr., Fair Oaks Ranch, Texas 78015. Between February 2022 and March 2023, Kent, as Trustee of the Kent Family Revocable Trust, received approximately $80,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Kent, as Trustee of the Kent Family Revocable Trust is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate

11. Jason Vohs resides at 11325 44th St. SW, Dickinson, North Dakota 58601. In November 2023, Vohs received approximately $75,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Vohs is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

12. Bryan Myers resides at 2385 72nd Ave. NW, Parshall, North Dakota 58770. Between April 2022 and November 2023, Myers received approximately $69,330 in Returns traceable to the Receivership Defendants' fraudulent scheme. Myers is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

13. Braden Staal resides at 3715 114th Ave. SW, Dickinson, North Dakota 58601. Between May 2021 and June 2023, Staal received approximately $69,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Staal is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

14. Ben Menges resides at 11333 E Bonita Crk, Safford, Arizona 85546. Between October 2022 and December 2023, Menges received approximately $64,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Menges is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

15. Jared Larsen resides at 7914 Fisher Island Dr., Miami Beach, Florida 33109. Between August 2021 and September 2022, Larsen received approximately $63,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Larsen is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

16. Kevin Daily resides at 1360 Smoketree Terrace, Suwanee, Georgia 30024. Between April 2022 and December 2023, Daily received approximately $52,542 in Returns traceable to the Receivership Defendants' fraudulent scheme. Daily is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

17. Todd & Nanette Edmonson reside at 11769 1st St. SW, Kildeer, North Dakota 58640. Between January 2022 and June 2023, the Edmonsons received approximately $52,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. The Edmonsons are therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

18. Todd Kieler resides at 3816 Farthing Rd., Cheyenne, Wyoming 82001. In May 2022, Kieler received approximately $50,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Kieler is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

19. Justin Dolezal resides at 149 199th Ave SW, Kildeer, North Dakota 58640. In August 2023, Dolezal received approximately $50,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Dolezal is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

20. Robert Dolezal resides at 149 199th Ave SW, Kildeer, North Dakota 58640. In August 2023, Dolezal received approximately $50,000 in Returns traceable to the Receivership

Defendants' fraudulent scheme. Dolezal is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

21. Blake Phillips resides at 7417 Estrid Trl., San Antonio, Texas 78244. Between October 2022 and November 2023, Phillips received approximately $50,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Phillips is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

22. Dean & Donna Knutson reside at 230 95th Ave NW, Dunn Center, North Dakota 58626. Between January 2021 and March 2023, the Knutsons received approximately $40,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. The Knutsons are therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

23. Edward Danks Jr. resides at 3542 Highway 22, Newton, North Dakota 58763. Between November 2021 and May 2023, Danks received approximately $33,600 in Returns traceable to the Receivership Defendants' fraudulent scheme. Danks is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

24. James Pojorlie resides at 12191 Lone Butte Rd., Grassy Butte, North Dakota 58634. In September 2023, Pojorlie received approximately $31,500 in Returns traceable to the Receivership Defendants' fraudulent scheme. Pojorlie is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

25. Suzanne Menges resides at 11333 E Bonita Crk, Safford, Arizona 85546. In November 2023, Menges received approximately $30,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Menges is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

26. James Hensel resides at 15412 E. 87th St. N., Owasso, Oklahoma 74055. Between April 2021 and November 2022, Hensel received approximately $30,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Hensel is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

27. Carl McQueary resides at 3200 Blacktail Loop, Butte, Montana 59701. In October 2023, McQueary received approximately $30,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. McQueary is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

28. William Wiley resides at 811 S. Edwards St., Charlotte, Texas 78011. In September 2023, Wiley received approximately $24,250 in Returns traceable to the Receivership Defendants' fraudulent scheme. Wiley is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

29. James Kruse resides at 7260 Willow Creek Rd., Eden Prairie, Minnesota 55344. Between March 2022 and March 2023, Kruse received approximately $24,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Kruse is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

30. Kenneth Bobbs resides at 1481 Wayne St., Norton, Ohio 44203. In January 2023, Bobbs received approximately $22,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Bobbs is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

31. Scott Janko resides at 6900 Westcliff Dr., Ste. 603, Las Vegas, Nevada 89128. In November 2022, Janko received approximately $20,000 in Returns traceable to the Receivership

Defendants' fraudulent scheme. Janko is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

32. Miguel Rodriguez resides at 7004 Cokui Dr., Killeen, Texas 76542. In April 2023, Rodriguez received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Rodriguez is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

33. Michael O'Donnell resides at 584 Bent Pine Cir., New Hope, Pennsylvania 18938. Between January 2022 and February 2023, O'Donnell received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. O'Donnell is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

34. Clay Kennedy resides at 509 Paulson Dr., Las Vegas, Nevada 89123. Between September 2021 and September 2022, Kennedy received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Kennedy is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

35. Brent A. Stall resides at 36800 Hungry Lake Ln., Frazee, Minnesota 56544. Between March 2021 and March 2022, Stall received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Stall is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

36. Benjamin Glenn resides at 28987 County Road 125, Simla, Colorado 80835. Between March 2022 and March 2023, Glenn received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Glenn is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

37. Aaron Christensen resides at 11012 Canyon Rd. E, Ste. #8 PMB #130, Puyallup, Washington 98373. Between April 2022 and May 2023, Christensen received approximately $20,000 in Returns traceable to the Receivership Defendants' fraudulent scheme. Christensen is therefore in possession of assets that are the rightful property of and should be returned to the Receivership Estate.

## IV.
## JURISDICTION AND VENUE

38. As the Court that appointed Receiver, this Court has subject matter jurisdiction over any claim brought by Receiver to execute his Receivership duties. *See Janvey v. Reeves-Stanford*, 2010 WL 11463486, at *3 (N.D. Tex. Nov. 18, 2010) (noting that when a receiver brings a recovery action in furtherance of his duties, the appointing court "has ancillary subject matter jurisdiction over every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.") (quoting *Crawford v. Silette*, 608 F.3d 275, 278 (5th Cir. 2010)).

39. Receiver timely filed the original SEC Complaint and the Order in all United States District Courts in which districts Receivership Assets are believed to be held pursuant to 28 U.S.C. § 754, giving this Court *in rem* and *in personam* jurisdiction. Section 754 and 28 U.S.C. § 1692 provide the appropriate statutory authority such that "the territorial jurisdiction of the appointing court is extended to any district of the United States where property believed to be that of the receivership estate is found." *Janvey*, 2010 WL 11463486 at *7 (quoting *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981)). "By allowing a receiver and district court to exercise jurisdiction over the purported receivership estate property, section 754 serves 'as a stepping stone on [a court's] way to exercising *in personam* jurisdiction' over those persons having custody or control over the property at issue.'" *Id*. (quoting *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 290

(D.C. Cir. 1996)). Once a receiver files the appropriate documents pursuant to section 754, he may then serve process in that district under section 1692. *Id*. Taking such actions here, the Receiver obtains both *in rem* jurisdiction over Receivership Estate property in Relief Defendants' custody or control and the ability to serve process under the nationwide service provisions of section 1692.

40. Venue for this action is proper in the Northern District of Texas because: (1) this action is ancillary to the SEC proceeding referenced above, which is already pending in this District; (2) Receiver was appointed in this District; and (3) this action involves Receivership Assets within the meaning of the Order, which expressly states that Receiver is authorized, empowered and directed to institute such actions and legal proceedings as may be necessary to enforce the Order with this Court.

## V.
## BACKGROUND FACTS

### A. Agridime Operated a Fraudulent Ponzi Scheme.

41. Agridime purported to be a cattle and meat distribution company that, before Receiver's appointment, was operated by Josh Link and Jed Wood and headquartered in Fort Worth, Texas. With operations across several states, Agridime claimed that its "proprietary beef supply chain" allowed it to offer "guaranteed pricing" and "year-round availability" to its customers.

42. Agridime began offering investors, through its publicly available website, unrestricted Facebook page, and team of sales representatives, an opportunity to "make money raising cattle without having to do all the work."

43. Agridime specifically offered investors a contract to purchase calves for $2,000 a head. In exchange for $2,000, Agridime promised that it would raise the calf and, after one year and seven days, Agridime would buy back the calf at an artificially set, higher price to provide a

promised return. The company generally offered guaranteed 15-32% return on these Cattle Contracts. An example of the form of Cattle Contract used by Agridime is provided below:

**Agridime**

3000 S Hulen St Suite 124
Fort Worth, TX 76109
888-664-6621 Phone
888-992-4333 Fax
Cattle@agridime.com

**LIVESTOCK CONTRACT #7685**

This Contract entered into on **June 7th, 2023** by and between [redacted] hereinafter called Seller, and **Agridime Of Fort Worth, TX** hereinafter called Buyer. The Seller agrees to sell and Agridime (the "Buyer") agrees to purchase from the Seller the below described cattle in accordance with the preceding terms and conditions, which are legally binding on the Seller and Buyer. Agridime is licensed and bonded in accordance with the USDA. All cattle are insured for death loss. In the event of death, Agridime will replace any lost cattle and maintain the guaranteed return set forth below.

| Number of Head | Sex | Breed, Sire & Dam Breakdown or Color | Base Wt (lbs) | Price | Delivery Schedule And Dates |
|---|---|---|---|---|---|
| 125 | Steers And/Or Heifers | Home raised calves, Angus Based | 1,300-1,500 | $2,600 per head | Freight on Buyer-Hope, KS and/or Satanta, KS: June 7th, 2023 to June 17th, 2024 |

CONTRACT TERMS: [redacted] **agrees to purchase one hundred and twenty-five steers and/or heifers for $2,000 per steer or heifer ($250,000 total). Agridime agrees to pay 30% per year profit on those cattle. Guaranteed yearly profits of 30%. Contract to be paid 7-10 business days after the final date set forth in the above delivery schedule. Payment to be made by Agridime via electronic funds transfer. Contract terms are payable 12 months post the date set forth in this contract, or upon receipt of funds from the aforementioned "seller".**

Signature: [redacted]
Seller: [redacted]
Accepted By: [redacted]
Date accepted: 6/8/2023

Signature: DocuSigned by: Josh Link
Buyer: Agridime LLC
Accepted By: Josh Link
Date accepted: 6/7/2023

44. In each Cattle Contract, the investor's role was passive. Even though the Cattle Contracts describe the transaction as a "purchase," investors never took possession of the cattle and the cattle at all times remained in Agridime's supply chain. Consequently, investors depended entirely on Agridime and its "proprietary beef supply chain" to generate returns on their investments.

45. From January 2021 through December 2023, Agridime raised approximately $191 million from more than 2,100 investors in multiple states through its sales of Cattle Contracts.

46. Receivership Defendants represented that investor funds would be used to purchase cattle when, in reality, Agridime's records reveal that a substantial portion of funds generated from Cattle Contract sales were used to pay investors in prior Cattle Contracts that came due and/or pay commissions to Agridime's salesforce.

47. While Agridime did have some legitimate business operations and raised some cattle, these activities were unable to generate the guaranteed 15-32% Returns. Thus, there was a consistent practice since October of 2021 of paying older investors back with money from new investors.

48. The Court in the Receivership case has made a finding that Agridime operated as a Ponzi scheme as of October 1, 2021. ECF No. 118.

**B. Agridime Transferred Investment Proceeds from the Fraudulent Ponzi Scheme to Relief Defendants.**

49. Agridime paid Relief Defendants Returns that exceeded their principal investment. Because Agridime did not make sufficient profit to pay a return of 15-32% per year as represented, the Returns received by Relief Defendants were fictitious, as their money was never used to purchase cattle and never generated any real return. Rather, Agridime used the monies invested by later investors who bought fraudulent Cattle Contracts to pay the Returns to Relief Defendants.

50. These Returns from the fraudulent Ponzi scheme described above were transferred by Agridime to Relief Defendants for the purpose of concealing and perpetuating the scheme. Indeed, because the Court has found that Agridime operated as a Ponzi scheme since October 1, 2021, the post-October 2021 Returns transferred to Relief Defendants are presumptively fraudulent.

51. The Returns that the Relief Defendants received are, therefore, properly considered assets of the Receivership Estate and must be returned to the Receivership Estate to compensate victims of the Agridime fraud according to principals of law and equity.

52. The Receiver has made written demand for return of the Returns. However, the Returns have not been repaid by Relief Defendants.

## VI. CAUSES OF ACTION[4]

### A. Count One: Actual Fraudulent Transfer under TEX. BUS. & COM. CODE § 24.005(a)(1).

53. Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

54. Receiver is entitled to disgorgement of all Returns paid to Relief Defendants because such payments constitute fraudulent transfers under applicable law. Receivership Defendants transferred the Returns to Relief Defendants with actual intent to hinder, delay, or defraud their creditors. As a result, Receiver is entitled to the disgorgement of those Returns from Relief Defendants.

55. Receiver may avoid transfers made with the actual intent to hinder, delay, or defraud creditors. Receiver Defendants' operation as a Ponzi scheme is sufficient to establish the fraudulent intent behind any transfers it made. *Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011); *see also Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) ("[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception.").

---

[4] To the extent necessary, Receiver pleads and asserts each of its causes of action in the alternative.

56. As such, Receiver is entitled to disgorgement of all Returns paid to Relief Defendants under TEX. BUS. & COM. CODE §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under TEX. BUS. & COM. CODE § 24.008 or otherwise.

57. Moreover, under applicable fraudulent transfer law, Receiver is entitled to attorneys' fees and costs for his claims against Relief Defendants. TEX. BUS. & COM. CODE § 24.013. As a result, Receiver requests reasonable attorneys' fees and costs for prosecuting his fraudulent-transfer claims against Relief Defendants.

**B. Count Two: Constructive Fraudulent Transfer under TEX. BUS. & COM. CODE §§ 24.005(a)(2) and 24.006.**

58. Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

59. Receivership Defendants paid the Returns to Relief Defendants without receiving reasonably equivalent value. *Janvey v. Brown,* 767 F.3d 430, 442 (5th Cir. 2014) ("[F]rom the perspective of the transferor, each interest payment decreased net worth, and because the investor-defendants have no claim for contractual interest from a Ponzi scheme, the transferor received nothing of value that preserved its net worth.").

60. Moreover, Agridime was insolvent at the time or became insolvent as a result of the transfer of the Returns, and intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

61. As such, Receiver is entitled to disgorgement of all Returns paid to Relief Defendants under TEX. BUS. & COM. CODE §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under TEX. BUS. & COM. CODE § 24.008 or otherwise.

62. Moreover, under applicable fraudulent transfer law, Receiver is entitled to attorney's fees and costs for his claims against Relief Defendants. TEX. BUS. & COM. CODE §

24.013. As a result, Receiver requests reasonable attorney's fees and costs for prosecuting his fraudulent transfer claims against Relief Defendants.

## VII.
## CONDITIONS PRECEDENT

63. All conditions precedent to recovery have been excused, performed, or have occurred.

## VIII.
## ATTORNEYS' FEES AND EXPENSES

64. Receiver requests an award of reasonable and necessary attorneys' fees, expenses, and court costs, pursuant to applicable laws, including but not limited to TEX. BUS. & COM. CODE § 24.013.

## IX.
## PRAYER

Receiver respectfully requests the following:

a. An Order providing that the Returns received by Relief Defendants were fraudulent transfers under applicable law;

b. An Order providing that the Returns received by Relief Defendants are property of the Receivership Estate;

c. An Order establishing the amount of Returns each Relief Defendant received;

d. An Order providing that each Relief Defendant is liable to the Receivership Estate for an amount equaling the amount of Returns they received;

e. An Order requiring Relief Defendants to pay to Receiver the Returns they received;

f. An award of costs, attorneys' fees, and prejudgment interest; and

g. Such other and further relief, general or special, as this Court may deem just and proper.

Dated: March 30, 2026.

Respectfully submitted,

*/s/ Colin P. Benton*

Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
Kyle K. Weldon
State Bar No. 24097192
kyle.weldon@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Fax: (817) 332-7789

**ATTORNEYS FOR STEVE FAHEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR AGRIDIME LLC**